**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| STEPHEN J. LARSON, ) | |
| ) | 2:06-CV-1471-RCJ-GWF |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| PATRICK A. GALLIHER; RMD ) | |
| TECHNOLOGIES, INC., ) | |
| ) | |
| Defendants. ) | |

This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction (#2) and Defendants' Motion to Dismiss for Lack of Jurisdiction and Improper Venue (#9). The Court has considered the motions, the pleadings on file, and oral argument on behalf of all parties. It is hereby ordered that Plaintiff's Motion for Preliminary Injunction (#2) is *granted* and Defendants' Motion to Dismiss (#9) is *denied*.

## BACKGROUND

Plaintiff Stephen Larson, a resident of Holtville, California and Las Vegas, Nevada, is the owner and publisher of three newspapers in the Imperial Valley in California, *The Holtville Tribune*, the *Imperial Valley Weekly*, and the *Calexico Chronicle*. Defendant Patrick Galliher, founder and president of Defendant RMD Technologies, is a resident of Holtville, California and competes with Larson in the newspaper business in California. In

December 2005, Galliher started his own newspaper, *The Holtville Progress*, which directly competes with Larson's three papers.

On April 13, 2006, RMD registered the following domain names: <holtvilletribune.com>, <imperialvalleyweekly.com> and <calexicochronicle.com>. Individuals accessing these domain names are linked to a site advertising Defendants' newspaper. As these domain names contain Larson's newspaper trademarks, Plaintiff filed a Motion for a Preliminary Injunction under 15 U.S.C. § 1125(d) seeking to place on hold and lock the allegedly infringing domain names, and requiring transfer of the domains to Larson for the pendency of the litigation. Defendant Galliher was initially listed as the administrative and technical contact for the domain names and later changed the registration to reflect himself as the registrant. This is not the first legal dispute between Larson and Galliher. On June 15, 2006, Galliher filed a slander lawsuit against Larson in Nevada state court after Larson printed stories in his newspapers detailing Galliher's alleged cybersquatting activities. *Galliher v. Larson, et al.*, District Court, Clark County of Nevada, Case No. A523387.

On November 28, 2006, Defendants specially appeared before the Court to bring a Motion to Dismiss for lack of jurisdiction and improper venue. (#9.) They contend that the Court lacks personal jurisdiction because both Defendants reside and conduct business only in California. They also note that the underlying events giving rise to the current claims occurred in California. Defendants claim that venue is improper for the same reasons. The Court disagrees, finding that jurisdiction and venue is proper, and holds that a preliminary injunction should issue.

**DISCUSSION**

I. <u>**Motion to Dismiss: Jurisdiction and Venue**</u>

Before reaching the merits of the cybersquatting allegation and corresponding request for injunctive relief, the Court must first decide the threshold issue if jurisdiction and venue is appropriate in this matter. The Court finds that it has personal jurisdiction over both Defendants and that venue in this district is proper.

  A.  **Personal Jurisdiction**

    1.  **Defendant Galliher Waived His Jurisdictional Defenses**

Jurisdiction over Defendant Galliher is proper in this case because he waived any jurisdictional defenses by bringing the slander lawsuit against Plaintiff in Nevada state court. As previously noted, Galliher brought a slander action against Larson in Nevada state court in June 2006, after Larson printed newspaper stories accusing Galliher of cybersquatting. In *General Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20 (1st Cir. 1991), the First Circuit held that a third party defendant waived its jurisdictional defenses to a first suit when it later filed an action against the plaintiff on the same set of operative facts. *Id.* at 23. It stated that "the plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condition for opening its courts to the plaintiff." *Id.* The Circuit noted that it would be grossly unfair to allow a party to enjoy the full benefits of a forum as a plaintiff and then allow him to retain immunity from suit as a

defendant with respect to the same basic claims, transactions, or nucleus of operative facts. *Id.*

The present case is analogous to *Interpole*. While Galliher's slander action involves allegations of printing deceitful newspaper stories and the current case concerns cybersquatting, the two cases essentially revolve around the same set of operative facts: Galliher's misappropriation of Larson's newspaper trademarks through registering the three domain names. Indeed, whether Galliher is actually guilty of cybersquatting directly bears on whether Larson can be found guilty of slander – for truthfulness is a valid defense to slander. It would be unfair to allow Galliher to utilize the Nevada state courts as a plaintiff in his dispute with Larson and then grant him immunity from having to defend any suits in the forum. Therefore, Defendant Galliher has impliedly consented to the jurisdiction of this Court through filing his earlier slander action in Nevada court.

**2.     Specific Jurisdiction Over Defendant RMD is Proper**

While RMD was not a party to the slander lawsuit, so it has not waived its jurisdictional defenses, jurisdiction is nevertheless proper as to it. Plaintiff has fulfilled his burden of proving that this Court has specific personal jurisdiction over RMD in the present dispute.

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantive justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Since Nevada's long arm jurisdictional statute "is coextensive with federal due process

requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800-01; *see also* NRS 14.065. The Ninth Circuit utilizes a three prong test for analyzing a claim of specific jurisdiction: (1) whether the defendant purposefully availed itself of the "privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) whether the claim "arises out of or relates to defendant's forum-related activities"; and (3) whether the exercise of jurisdiction comports "with fair play and substantive justice," i.e., whether it is reasonable." *Schwarzenegger*, 374 F.3d at 802.

In tort cases, purposeful availment is satisfied if an out of state defendant "merely engages in conduct aimed at, and having an effect in, the [forum] state." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998). The requirement is satisfied if the defendant engages in wrongful conduct targeted at a plaintiff whom defendant knows to be a resident of the forum state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). On very similar facts, the Ninth Circuit in *Panavision* held that an Illinois resident who registered a California defendant's domain names as his own had purposefully availed himself of California law. 141 F.3d at 1322. The court held that while registering someone else's trademark as a domain name and posting it on the web does not open up an out of state resident to suit in any jurisdiction, the willful targeting of such tortious behavior at a forum resident does establish purposeful availment. *Id.* In this case, Defendant RMD registered and used Plaintiff's trademarks as domain names. These trademarks were registered by Defendant RMD. Plaintiff is a Nevada resident. At oral argument and in the slander lawsuit, Defendants conceded that Plaintiff's principal asset lies

in the forum. Therefore, in registering these allegedly infringing trademarks, Defendant RMD targeted its tortious behavior at a Nevada resident and opened itself up to suit here.

Additionally, Plaintiff has demonstrated that RMD lists thirty three Nevada Corporations as clients, some of them Nevada specific, such as the University of Nevada-Reno. RMD's business contacts with these corporations also contribute to its purposeful availment of the forum.

In *Panavision*, the Ninth Circuit also held that the defendant met the latter two specific jurisdiction requirements. By registering targeting its infringing behavior against an out of state resident, the defendant in that case caused injuries to the plaintiff in his forum. Therefore, the plaintiff's claims arose out of the defendant's forum related activities. *Id.* at 1322. The situation is the same here. RMD registered infringing domain names which had the clear effect of injuring Plaintiff in his resident state, Nevada.

Once a plaintiff establishes that the defendant has some minimum contacts with the forum state, "a rebuttable presumption arises that the exercise of jurisdiction is reasonable" and "the defendant bears the burden of ultimately proving that the exercise of jurisdiction is unreasonable." *Haisten*, 784 F.2d at 1397. Courts consider several factors in determining whether the exercise of personal jurisdiction would be reasonable: (1) the extend of defendant's purposeful interjection into the forum state; (2) the burden on the defendant; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the important of the forum to plaintiff's interests in convenient and effective relief; and (7) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Indus.*, 11

F.3d 1482, 1488-89 (9th Cir. 1993). Evaluating these factors, the *Panavision* court held that jurisdiction was reasonable over the infringing defendant. The court noted that although some factors weighed in the defendant's favor, such as the defendant's burden in litigating out of state and the availability of an alternative forum, the factors on balance weighed in favor of exercising jurisdiction. *Panavision*, 141 F.3d at 1324. The factors weigh similarly in this case. It would admittedly be more convenient to Defendants for the case to be adjudicated in California and the Southern District of California is an available alternative forum. But, that said, the Defendants have purposefully interjected themselves into Nevada by aiming tortious behavior at one of its residents. Furthermore, the Defendants have the burden of proving that jurisdiction is unreasonable, and they have not met this burden. Therefore, jurisdiction is reasonable in this case.

The three requirements for exercising personal jurisdiction over Defendant RMD are fulfilled in this case. The Ninth Circuit has decided an almost identical case in *Panavision*, and the Court follows its analysis. Therefore, the Court can appropriately exercise jurisdiction over both Defendants.

**B.    Venue is Proper**

The Court also finds that venue is proper in this case. In civil actions not founded on diversity jurisdiction, 28 U.S.C. § 1391 provides that venue is appropriate only in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

Under 28 U.S.C. § 1391(c), RMD is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action commenced." As previously established, this Court does not have personal jurisdiction over RMD. RMD is thus located in the Southern District of California for purposes of determining venue. However, the events giving rise to Plaintiff's claims occurred in Nevada. As previously discussed, Defendants aimed tortious infringing behavior at a Nevada resident. The effects of this behavior was felt in the forum. Therefore, venue is proper as to Defendant RMD.

As to Defendant Galliher, venue is also proper. In filing the defamation lawsuit in California, Galliher has waived any objections to both jurisdiction and venue in this case. In *Interpole*, the first Circuit held that "the plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condition for opening its courts to the plaintiff." *Interpole*, 940 F.2d at 23 (quoting *Adam v. Saenger*, 303 U.S. 59, 67-68 (1938)). It would be incongruous to hold that an out of state resident, who normally would not be subject to a suit in a forum, had waived his jurisdictional defenses to the forum, and then to find that venue was improper. By filing the defamation action against Larson, which involves the same basic core facts as the infringement suit, Galliher has consented to both the jurisdiction and venue of the forum in any related suits between the parties. Therefore, venue is proper as to Defendant Galliher.

Defendant's Motion to Dismiss is *denied*. The Court finds that both jurisdiction and venue are proper in this matter as to both Defendants.

## II.     Motion for a Preliminary Injunction: Cybersquatting

The Plaintiff's Motion for Preliminary Injunction under the Lanham Act, 15 U.S.C. § 1114 should be granted. The Court finds that:

1. Plaintiff will suffer irreparable injury if the Court does not require Wild West Domains, Inc., the domain register, to place the infringing <holtvilletribune.com>, <imperialvalleyweekly.com> and <calexicochronicle.com> domain names on hold, and lock, change or disable the domain name server information, and deposit them with the Court, pending litigation of this matter;

2. Plaintiff is likely to succeed on the merits of its claims for cybersquatting under 15 U.S.C. § 1114;

3. The balance of hardships tips in favor of Plaintiff because the preliminary injunction will merely place the infringing domain names on hold and lock pending trial, and failure to issue the injunction would potentially cause Plaintiff to suffer and incur additional expense in having to file additional lawsuits if the domain names were to be transferred to other registrants during th pendency of this action.

## CONCLUSION

Therefore, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (#9) is *denied*. The Court finds that jurisdiction and venue are proper as to both Defendants.

IT IS FURTHER ORDERED that Plaintiff's Motion for Preliminary Injunction (#2) is *granted*. The domain names <holtvilletribune.com>, <imperialweekly.com> and <calexicochronicle.com> shall be immediately placed on hold and remain locked by Wild West Domains, Inc., and/or its successor registrars, which will deposit the domain names into

the registry of the Court, pending litigation of the matter;

IT IS FURTHER ORDERED that a nominal bond of $100 shall be required because the evidence indicates that Defendants will only suffer minimal damage by the issuance of this injunction.

DATED: January 5, 2007.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE